UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| IRINA PASTUKH and ANDREY PASTUKH, individually and on behalf of all other persons similarly situated, | ECF Case: |
| Named Plaintiffs, | No. _____ |
| v. | COMPLAINT |
| HARBOR CLUB OWNERS ASSOCIATION INC. and LEGACY VACATION CLUB SERVICES LLC d/b/a LEGACY VACATION CLUB, Jointly and Severally, | JURY TRIAL DEMANDED |
| Defendants. | |

## NATURE OF ACTION

1.      Named Plaintiffs Irina Pastukh ("Mrs. Pastukh") and Andrey Pastukh ("Mr. Pastukh") (collectively, "Pastukhs") worked for Defendants Harbor Club Owners Association Inc. and Legacy Vacation Club Services LLC d/b/a Legacy Vacation Club (collectively, "Defendants") for over 12 years, starting from approximately April 2006 until they were wrongfully terminated on August 31, 2018.

2.      Pastukhs allege on their behalf and other similarly situated current and former employees of Defendants, under Fed. R. Civ. P. 23 (a) and (b), that Defendants engaged in unlawful employment practices on the basis of national origin, against their employees of Russian origin or from countries of ex-USSR, and retaliation, in violation of Title VII of the Civil Rights Act of 1964, § 42 U.S.C. §§ 2000e *et seq.* ("Title VII") and under Florida Civil Rights Act of 1992, Florida Statutes §§760.01760.11 (the "FCRA").

## THE PARTIES

3.      Harbor Club Owners Association Inc. ("HCWA") is a not-for-profit business corporation organized under Florida law, with its headquarters in Lake Buena Vista, Florida.

4.      Legacy Vacation Club Services LLC d/b/a Legacy Vacation Club ("LVC") is a limited liability company organized under Florida law, with its headquarters in Orlando, Florida.

5.      Mrs. Pastukh was, at all relevant times, an adult individual residing in Palm Coast, Florida.

6.      Mr. Pastukh was, at all relevant times, an adult individual residing in Palm Coast, Florida

7.      Upon information and belief, Defendants are an enterprise engaged in commerce or in the production of goods for commerce. Defendants have engaged in commerce or in the production of goods for commerce, because, *inter alia*, they have employees that handle goods and materials that have been produced for and moved in commerce, and, upon information and belief, their annual gross volume of business is at least $500,000.00. These goods and materials that have been produced for and moved in commerce, which their employees have handled, include, but are not limited to, linens and bedding, repair and construction supplies, computers and paper.

8.      Each Defendant, individually or jointly, has employed Pastukhs, as each controlled their work schedule and employment conditions, determined their payment rate and method, and kept at least some records regarding their employment.

9.      Defendants operate a single integrated enterprise, disregarding corporate form and sharing common management, staff, and resources, that jointly employed Pastukhs and similarly situated employees at all relevant times. Each Defendant has had substantial control over Pastukhs' working conditions and over the unlawful policies and practices alleged herein.

JURISDICTION, VENUE AND EXHAUSTING ADMINISTRATIVE REMEDIES

10.      This Court has subject matter jurisdiction over this matter under 28 U.S.C. §§ 1331 and 1337, 1343, and supplemental jurisdiction over Pastukhs' FCRA claims under 28 U.S.C. § 1367.

11.      Venue is proper in this District under 28 U.S.C. §§1391(b)(1), 1391(b)(2): a substantial part of the events giving rise to the action occurred in this District; and Defendants reside in this District.

12.      This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

13.      On March 14, 2019, Pastukhs filed charges with the U.S. Equal Employment Opportunity Commission and on October 25, 2019 and December 10, 2019 the EEOC issued them Notices of Right to Sue, copies of which are attached as Exhibit A.

## STATEMENT OF FACTS

14.     Defendants operate a chain of time share resorts in Florida and several other states, including Colorado, New Jersey and Nevada.

15.     Pastukhs are husband and wife, devout Russian Orthodox Christians of Russian national origin, and have worked for Defendants at their Palm Coast Resort, located at 98 Palm Coast Resort Boulevard, Palm Coast, Florida, 32137 (the "Resort"), for over 12 years, from approximately April 2006[1] and until August 31, 2018, when they were wrongfully terminated.

16.     Mrs. Pastukh worked as a Housekeeping Manager for Defendants, leading and supervising the Housekeeping Department, consisting of about 16 employees. Mrs. Pastukh normally worked 5 days a week, equaling approximately 40 or more hours per week.

17.     Mr. Pastukh worked as a maintenance man in the Maintenance Department. Mr. Pastukh normally worked 5 days a week, equaling approximately 40 hours per week.

18.     Pastukhs have worked in the maintenance and housekeeping industry in Florida over 19 years and have developed an outstanding reputation for excellence and commitment to hard work and were featured and recognized as Star Contest Winners by RCI Ventures Magazine as exemplary employees. Over the years, Pastukhs have received countless positive evaluations, most often stating that they met or exceeded expectations from their superiors at any job they have held, including in their positions with Defendants.

---

[1] All date ranges and times in the Complaint are based on Plaintiffs' memory and good faith, best estimates.

19.     At all relevant times, the vast majority of Defendants' employees in Maintenance and Housekeeping Departments, including the ones that Mrs. Pastukh supervised, were Russian-speakers of Russian national origin or from former USSR countries, and have worked for Defendants for more than 10 years (the "Staff").

20.     Around April 2017, Defendants implemented several staffing and policy changes at the Resort, including hiring a new Resort Manager, Diana Yost ("Yost").

21.     Shortly after being hired, Yost began to display an openly hostile attitude towards the Russian-speaking Staff, including Pastukhs.

22.     Despite the Staff having worked and communicated with over seven different managers without any problems over the years, Yost often refused and avoided speaking with the Staff, stating that she "did not understand their Russian accents" and could not work with them.

23.     When the Russian-speaking Staff addressed or tried to communicate with Yost in English, she immediately refused to understand and communicate with them. She, instead, would immediately request that Mrs. Pastukh be present to "translate."

24.     Yost constantly requested that Mrs. Pastukh come to her office, sometimes multiple times a day, to "translate" what Yost had to say to the Staff and to be a middle-person between her and the Staff, thereby minimizing her interactions with them.

25.     For instance, Yost told Mrs. Pastukh that she cannot understand and therefore needs her to "translate" communications between her and Natasha Vissarionova (Housekeeping Inspector), who has worked for Defendants for over 10 years without any previous problems in communicating with other management team members.

26.     Yost also requested Mrs. Pastukh to "translate" her communications with Larysa Denyskina, Housekeeping Inspector, who worked for Defendants for over 7 years and who also had no previous communication issues.

27.     When Mrs. Pastukh had days off, Yost would contact her on almost every day off, via calls or text messages, demanding that Mrs. Pastukh immediately "translate" or convey messages to the Staff.

28.     Mrs. Pastukh complied with Yost's requests and communicated for Yost with the Russian-speaking Staff even on her days off.

29.     Defendants did not pay Mrs. Pastukh for all the hours she spent working for them, including the time she spent working for Defendants on her days off at Yost's request.

30.     Yost did not refuse to communicate to and did not request Mrs. Pastukh's help in speaking with any non-Russian speaking Staff members.

31.     Yost did not hold back her displeasure about most of the Staff being of Russian national origin or coming from Russian-speaking countries of the former USSR, telling Boris Rahmanov (security guard) that "[she] wanted to get rid of all the Russians from here."

32.     Yost was habitually rude, demeaning, hostile and discriminated against Mrs. Pastukh and the Staff.

33.     Mrs. Pastukh and other employees complained numerous times about Yost and the change in working conditions to Defendants and requested for the upper management team to come to the Resort from the Orlando headquarters to observe the

hostile working conditions, but their multiple complaints went unanswered for over a
year.

34.     Upon information and belief, at least 20 Russian-speaking employees quit
their jobs within 12 months after Yost began working for Defendants.

35.     Around early 2018, the Staff composed a letter to Defendants' Human
Resources Department that stated: "We the employees here at Legacy Resort Palm Coast
are reaching out to you again to express our feelings working with [Yost]. . . . [Yost's]
constant harassment, criticisms, and condescension have really spoiled the morale of this
property. . . . We are asking that you please take the time to come to this property and
speak to all of us. This working environment is not fair. We do what we are supposed to
do and yet are left to feel like trash. . . . please come and help us."

36.     In or around Spring 2018, the Staff and Mrs. Pastukh started to organize
and complain to Defendants more frequently, which, among other things, led to
Defendants' retaliation against Pastukhs and the Staff.

37.     In late May 2018, Mrs. Pastukh and approximately 20 Staff members
wrote and signed a letter (the "Letter") to Susana Guerra (Director of HR), complaining
of the difficulty they were having working with Yost.

38.     As the Manager of Housekeeping Department, Mrs. Pastukh was the first
person to sign the letter at the top and was tasked with emailing the Letter to Ms. Guerra,
which put a target on her back for complaining to Defendants.

39.     In relevant part, the Letter stated: "Our team, having worked together for
over 10 years… had a change of seven managers and we never had any conflicts with the
leadership or our team. . .   Over the past year the situation at this resort has changed

radically. Every single day at work is like a nightmare. We simply do not want to come to work anymore. . . . we have never had such a high turnover rate. We have a feeling, that we are working at a prison, and we are the prisoners. Every day is nervousness and disappointment."

40.     After the Letter, Defendants held a meeting with the Staff in May 2018 ("May Meeting").

41.     At the May Meeting, Mr. Rahmanov publicly informed Defendants that Yost has said to him that she wants to get rid of all the Russian employees. Additionally, the Staff informed Defendants of other incidents where Yost discriminated against them or treated them unfairly, including an incident on or about May 19, 2018, involving Tetyana Bodnaruk ("Ms. Bodnaruk"), a Russian-speaking member of the Staff, who has worked for Defendants for over 10 years.

42.     Despite all the complaints, Defendants condoned Yost's discriminatory behavior and did not remove Yost from working with the Staff, which was extremely demoralizing to the Staff and caused emotional anguish, anxiety and distress.

43.     Without any resolution, many Staff members continued to quit their jobs, including to Ms. Bodnaruk on or about May 28, 2018.

44.     As the situation deteriorated further and the Staff members continued to quit their jobs and complain, Defendants held a second meeting in or about June 2018 ("June Meeting"), attended by the HR Director, Vice President, Jodie Davis ("Vice President") and CEO, Tony Picciano, where they finally announced that Yost would be replaced by a new Resort Manager, Kimberly Frey ("Frey").

I.      Defendants' Continued Discrimination and Retaliation against the Staff[2]

45.     Despite the change in Resort manager, the discriminatory practices against the Staff continued, and arguably worsened when Defendants began to actively retaliate against Mrs. Pastukh and the Staff to try to get rid of them.

46.     The day after the June 2018 Staff meeting, Defendants came up with a new requirement for the Staff, requesting that all of them commit to become full-time employees, while knowing that most of the Staff had family obligations or second jobs and valued flexible schedules they had been working over the past 10 years.

47.     The day after the June 2018 Staff meeting, Vice President requested that Mrs. Pastukh give her the names of all the Staff members that are choosing to become full time employees, and the ones that cannot commit to being full time have to quit.

48.     This resulted in more members of the Staff having to quit, and, upon information and belief, Defendants began to replace them with other non-Russian speaker employees.

II.     Defendants' Retaliation and Discrimination against Pastukhs

49.     After the May and June Meetings, Defendants started making Mrs. Pastukh's work conditions intolerable to push her out of the job, by regularly harassing her, writing her up and using Mrs. Pastuhk's religious devotion against her by prohibiting her from attending St. Andrew Church, and in a further act of retaliation and religious discrimination, wrongfully terminated her husband, Mr. Pastukh.

---

[2] Subject lines are included only for organizational purposes.

a.    Religious Discrimination and Harassment

50.    Mr. Pastukh, a graduate of Moscow Religious Seminary, a priest since 1984, promoted to an archpriest in 1996, established Saint Andrew Russian Orthodox Church in Daytona Beach, Florida (the "St. Andrew Church"), to serve the Russian-speaking community in the area.

51.    At all relevant times, Mr. Pastukh served as an archpriest at St. Andrew Church and conducted religious services, sacrament of confession, funeral services, baptisms, wedding ceremonies, and liturgy for the public, including but not limited to, on religious holidays, Saturday evenings, and every Sunday, starting at approximately 9:30 a.m. and until as late as 1:30 p.m. to 4:00 p.m.

52.    For over 41 years, pursuant to her religious beliefs and in order to keep Sunday or the Sabbath holy, Mrs. Pastukh has abstained from secular work on Sundays and practices the sacrament of weekly confession.

53.    Mrs. Pastukh, as devout Russian Orthodox Christian and as the archpriest's wife, is also called by her devotion to worship through performing certain duties and services at St. Andrew Church, including but not limited to, helping Mr. Pastukh to prepare for worship and Sunday services, other special holidays, and welcomes the members of St. Andrew Church on Sunday mornings and hosts and provides food for the Church goers, when necessary.

54.    Defendants knew that Pastukhs are devout Russian Orthodox Christians, and that Mr. Pastukh is a Russian Orthodox archpriest and that Mrs. Pastukh practices her religion by attending and serving at St. Andrew Church.

55.     During the first 12 years of her employment with Defendants, Mrs. Pastukh always took Sundays off to attend church and observe her religion, until around June 2018, when Defendants changed Mrs. Pastukh's work schedule forcing her to work on Sundays against her religious beliefs.

56.     As part of Defendants' new anti-Russian-origin policies and in retaliation for Staff's complaints, the day after Defendants held the June Meeting, the Vice President singled out Mrs. Pastukh and summoned her to the office to inform her that she can no longer take Sundays off.

57.     Mrs. Pastukh told Vice President that she needs to attend St. Andrew Church on Sundays and is not allowed to do secular work on this day because it is against her religious beliefs, but Vice President refused to change her schedule back. The Vice President specifically told her that she will be in charge of making Mrs. Pastukh's new schedule.

58.     Vice President introduced the following changes to Mrs. Pastukh's schedule: 1) forbidding Mrs. Pastukh from taking Sundays off; 2) giving Mrs. Pastukh Tuesdays and Wednesdays off; 3) changing her starting time from 8:30 or 9:00 a.m., the normal time most Staff begins work, to 7:30 a.m.; and, 4) prohibiting Natasha Vissarionova, Housekeeping Inspector, to work on Sundays and manage the Staff on behalf of Mrs. Pastukh, as she has done for over 10 years, leaving Mrs. Pastukh absolutely no choice but to work on Sundays against her religious beliefs.

59.     Mrs. Pastukh also informed Vice President that since guests do not begin to check-out until around 10:00 a.m. and most of the Staff does not come in until 8:30

a.m. or after, that it makes no sense for her to be at work at 7:30 a.m. but Vice President said that doesn't matter and ordered Mrs. Pastukh to report to work at 7:30 a.m.

60.     Mrs. Pastukh continued to request Sundays off from Defendants, and asked the new Resort Manager, Frey, to change her schedule and allow her to attend St. Andrew Church, however Frey told Mrs. Pastukh: "it is not up to me, they have my hands tied," and that she had orders from the Vice President not to change Mrs. Pastukh's schedule back.

61.     Upon information and belief, the Vice President did not set anyone else's schedule at the Resort, except for Mrs. Pastukh's.

62.     In an attempt to resume her religious worship and attend St. Andrew Church and partake in the weekly Sunday confession, Mrs. Pastuhk took a two week vacation in June 2018.

63.     Before leaving for vacation, Mrs. Pastukh again asked Vice President to allow her to take Sundays off, however she replied that "You need to make a choice, it is either your work here or your religion. I hope while you are on vacation you have time to take care of it."

64.     Mrs. Pastukh asked Frey to allow her to take Sunday off for a big Russian Orthodox Christian holiday called the First Spas and Honey Savior, on August 19, 2018. However, Frey again refused Mrs. Pastukh's request and told her that the Vice President was in charge of her schedule.

65.     Upon information and belief, Frey had the power to set all Resort employees' schedules, except for Mrs. Pastukh's because of direct orders from the senior management team.

66.     On August 24, 2018, Vice President replied to another one of Mrs. Pastukh's emails pleading to allow her to attend St. Andrew Church by tauntingly stating that: "We can further evaluate this request once the peak travel season ends," seemingly referring to the slower months of Defendants business beginning in or around February.

67.     As Mrs. Pastukh continued to plead with Defendants to allow her to continue her religious worship before February, Defendants told her on or about August 24, 2018, that "what you are asking for [to take Sundays off] does not fall under reasonable accommodation, if you were your husband, and he wanted off on Sundays, that's called reasonable accommodation because he is a priest . . . , but since you are not the priest and you are his wife, and you want to go to services, [Defendants] do not have to accommodate you."

68.     On the same day, Defendants told Mrs. Pastukh that the accommodation they were offering her was to report to work at 7:30 a.m. on Sundays, then leave to go to St. Andrews Church at 8:45 a.m. and then report back to work at 1:00 p.m. Defendants also informed Mrs. Pastukh that she must make up the hours she takes off on Sundays during the week or use her vacation time to cover these hours.

69.     Given that St. Andrew Church is located in Daytona Beach, over 37 miles away from the Resort, Mrs. Pastukh informed Defendants that the window of time they proposed was not enough to worship or practice her religion, and effectively was preventing her from attending St. Andrew Church.

70.     Mrs. Pastukh asked Defendants on more than one occasion why she cannot be treated the same as Giuseppe Verdone, the Maintenance Manager, who is not a Russian Orthodox Christian and is allowed to take Sundays off and to start work at 8:30

or 9:00 a.m., or come in when he wishes in the afternoon. Specifically, on August 24, 2018, Mrs. Pastukh asked if she come in on Sundays after worship in the afternoon, but Defendants refused this request.

71.     Without being able to attend St. Andrew Church and practice her religion, Mrs. Pastukh became physically and emotionally ill. Mrs. Pastukh suffered extreme guilt and feelings of panic and angst from not being able to participate in the weekly Sunday confession and religious services.

72.     As a result, Mrs. Pastukh's started to experience depression, severe stress, anxiety, insomnia, memory loss and frequent strong headaches, body pain, and sudden crying spells.

73.     As the stress from not going to St. Andrew Church and not being able to confess continued to build, Mrs. Pastukh became depressed, felt that she had lost joy in life and experienced nausea, dizziness and vertigo, as well as heightened blood pressure and feelings of numbness in her hands.

74.     Mrs. Pastukh attended several doctor's, including her primary care physician and neurologists, and obtained several medical tests including an MRI, trying to try cure the symptoms caused by Defendants' retaliation and careless disregard for Mrs. Pastukh's religion.

      b.     <u>Defendants' Harassment and Write ups of Mr. Pastukh</u>

75.     In over 12 years of employment with Defendants, Mrs. Pastukh had never been written up, however, from May 2018 to August 2018, Defendants wrote her up three times:  on May 24, 2018, on June 16, 2018 and on August 30, 2018.

76.     In further retaliation, on August 31, 2018, without any prior warnings or disciplinary action, Defendants fired Mr. Pastukh, Mrs. Pastukh's husband.

III.     <u>Retaliatory and Discriminatory Termination of Pastukhs</u>

77.     On or around August 29, 2018, Mr. Pastukh used Defendants' online system to request a day off to attend his annual meeting with a cardiologist on August 30, 2018, which was immediately reflected on the Staff's schedule.

78.     On the same day, Mrs. Pastukh informed Frey that Mr. Pastukh requested the day off to attend a cardiologist appointment.

79.     Due to the ongoing retaliation and hostile work environment, Mrs. Pastukh told Mr. Pastukh that even though this was not required for doctor's appointments scheduled in advance and requested through the electronic system, he should obtain a doctor's note to give to Defendants to avoid any trouble and be extra safe.

80.     On or about August 31, 2018, when Mr. Pastukh went to Frey's office to give her the doctor's note, she asked Mr. Pastukh why he did not "follow the procedure," where an employee has to call in sick 2 hours before the beginning of work on the day he takes off sick.

81.     Mr. Pastukh replied that he did not call in 2 hours before the work day on August 30, 2018, because this was an expected sick day and that he had already requested August 29, 2018 off as he has done for years in the past.  In response, Frey simply stated that technically Mr. Pastukh did not follow the procedure and that he was fired.

82.     This retaliatory termination was the first disciplinary action of any kind that Mr. Pastukh received from Defendants in over 12 years of employment.

83.  On August 31, 2018, Mrs. Pastukh was effectively constructively discharged as Defendants created a work atmosphere that is so intolerable that she was forced to quit and any reasonable person in her situation would equally feel compelled to quit.

84.  Defendants treated the other Russian-speaking members of the Staff in the same or similar manner and gave them undeserved disciplinary actions and write ups.

85.  Just like they constructively discharged Pastukhs, Defendants have effectively forced out more than 20 Staff members out of their jobs by treating them in the same unlawful and discriminatory manner, by allowing and condoning anti-Russian slurs, undeserved write ups and disciplinary actions and unfair hostile treatment towards them.

## CLASS ACTION ALLEGATIONS

86.  Pastukhs assert these allegations and claims on their own and on behalf of a class of persons under Fed. R. Civ. P. 23(a), (b)(2) and (b)(3):

> All persons whom Defendants employ and have employed in the Maintenance Department or Housekeeping Department in various positions, including, but not limited to "housekeeper," "GRA," "housekeeping inspector," "housekeeping manager" or "maintenance worker," and other comparable positions with different titles, who are and were Russian-speakers, of Russian national origin, or came from counties from the former USSR, at any time since January 22, 2016 to the entry of judgment in this case (the "Class Period")(the "Class Members").

87.  The Class Members identified above are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within Defendants' sole control, upon information and belief, more than 40 Class Members exist.

88.     Pastukhs' claims are typical of the Class Members', and a class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of discrimination and retaliation litigation where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate Defendants.

89.     Defendants have acted or refused to act on grounds generally applicable to the Class Members, making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class Members.

90.     Pastukhs are committed to pursuing this action and have retained competent counsel experienced in employment law, discrimination and retaliation, wage and hour law, and class action litigation.

91.     Pastukhs have the same interest in this matter as all other Class Members and their claims are typical of Class Members'.

92.     Common questions of law and fact exist as to the Class Members that predominate over any questions solely affecting the individual Class Members, including but not limited to:

        a.      whether Defendants discriminated against Pastukhs and the Class Members based on their national origin;

        b.      whether Defendants treated the Class Members differently than other employees because of their national origin;

        c.      whether Defendants unfairly disciplined and subjected the Pastukhs and the Class Members to hostile work environment;

d.      whether Defendants terminated and/or created a hostile work environment which led to constructive discharged Pastukhs and the Class Members;

e.      whether Defendants retaliated against Pastukhs and the Class Members based on their national origin and/or for complaining against Defendants;

f.      whether Defendants employed Pastukhs and the Class Members, individually or jointly;

g.      whether the individual Defendants participated in the day-to-day management of the restaurant and are "joint employers" and liable to Pastukhs and the Class Members;

h.      whether Defendants are liable for all damages claimed hereunder, including but not limited to, interest, costs and disbursements and attorneys' fees; and

i.      whether Defendants should be enjoined from such violations of the in the future.

<u>FIRST CAUSE OF ACTION</u>
FAILURE TO ACCOMMODATE IN VIOLATION OF TITLE VII ON
BEHALF OF MRS. PASTUKH

93.     Pastukhs repeat and reallege every preceding allegation as if fully set forth herein.

94.     Since on or about June 2018, Mrs. Pastukh made numerous requests, both verbally and in writing, for religious accommodation.

95.     The accommodation the Mrs. Pastukh requested would not have caused an undue hardship to the Defendants.

96.     Instead, of reasonably accommodating Mrs. Pastukh's sincerely-held religious beliefs, Defendants retaliated by forcing her to work on Sundays, disciplined

and harassed Mrs. Pastukh, and then in further retaliation wrongfully terminated her husband, Mr. Pastukh, thus effectively constructively discharging Mrs. Pastukh by making it unbearable for her to work for Defendants.

97.     By virtue of Defendants' actions and inactions as set forth above, Defendants have violated Title VII with regard to Mrs. Pastukh by failing to accommodate her sincerely-held religious beliefs.

98.     Mrs. Pastukh's sincerely-held religious belief was a motivating factor in Defendants refusing to accommodate Mrs. Pastukh.

99.     The conduct of the Defendants in not reasonably accommodating Mrs. Pastukh's religious beliefs was intentional. Defendants engaged in a discriminatory practice or practices with malice or with reckless indifference to Mrs. Pastukh's federally protected rights.

100.    As a direct and proximate result of Defendants' actions, Mrs. Pastukh has suffered and will continue to suffer lost wages, benefits and entitlements, damage to her career and reputation, personal humiliation, emotional pain, mental anguish, emotional distress, physical pain and suffering, loss of enjoyment of life and embarrassment justifying an award including, but not limited to, back pay, lost benefits, front pay, compensatory damages, and punitive damages according to proof against Defendants.

## SECOND CAUSE OF ACTION
### VIOLATION OF TITLE VII -RELIGIOUS DISCRIMINATION (DISPARATE TREATMENT BEFORE FIRING) ON BEHALF OF MRS. PASTUKH

101.    Pastukhs repeat and reallege every preceding allegation as if fully set forth herein.

102.    After June 2018, Defendants failed to legitimately offer Mrs. Pastukh any reasonable accommodation for Mrs. Pastukh's religious beliefs and actively engaged in actions to discourage other employees from accommodating Mrs. Pastukh's religious beliefs.

103.    In its continuing effort to refuse any reasonable accommodation of Mrs. Pastukh's religious beliefs, Defendants continuously reprimanded and prevented Mrs. Pastukh from practicing and following her religious beliefs.

104.    The accommodation offered to Mrs. Pastukh where she had to come into work at 7:30 a.m. on Sunday, only to have to leave within an hour to drive to St. Andrew Church and where she had to report back to work at 1:00 p.m., before the end of religious services, was not a reasonable accommodation.

105.    Because of Mrs. Pastukh's religious beliefs, Defendants discriminated against Mrs. Pastukh and created a hostile work environment for Mrs. Pastukh, which included, *inter alia*, allowing other employees to taunt Mrs. Pastukh and to prevent her from observing her religious beliefs, and reprimanding Mrs. Pastukh for following her religious beliefs.

106.    Mrs. Pastukh's religion was the motivating factor why Defendants discriminated against her by creating a hostile work environment with repeated write ups, mocking her, and disallowing of an accommodation for her.

107.     The conduct of the Defendants in discriminating against Mrs. Pastukh due to her religion was intentional. Defendants engaged in a discriminatory practice or practices with malice or with reckless indifference to the federally protected rights of Mrs. Pastukh.

<u>THIRD CAUSE OF ACTION</u>
VIOLATION OF TITLE VII -RELIGIOUS DISCRIMINATION (TERMINATION) ON BEHALF OF PASTUKHS

108.     Pastukhs repeat and reallege every preceding allegation as if fully set forth herein.

109.     In their continuing effort to refuse any reasonable accommodation of Pastukhs religious beliefs, Defendants continuously reprimanded Pastukhs for following their religious beliefs.

110.     On August 31, 2018, the Defendants fired Mr. Pastukh, and constructively discharged Mrs. Pastukh by forcing her to quit her job.

111.     Pastukhs' religion was a motivating factor in Pastukhs' termination of employment with Defendants.

112.     The conduct of the Defendants in firing Pastukhs because of their religious beliefs was intentional. Defendants engaged in a discriminatory practice or practices with malice or with reckless indifference to the federally protected rights of the Pastukhs.

113.     As a direct and proximate result of Defendants' actions, Pastukhs have suffered and will continue to suffer lost wages, benefits and entitlements, damage to their career and reputation, personal humiliation, emotional pain, mental anguish, emotional distress, physical pain and suffering, loss of enjoyment of life and embarrassment

justifying an award including, but not limited to, back pay, lost benefits, front pay, compensatory damages, and punitive damages according to proof against Defendants.

<u>FOURTH CAUSE OF ACTION</u>
VIOLATION OF TITLE VII (42 U.S.C. §§ 2000E ET SEQ.) – RETALIATION ON
BEHALF OF PASTUKHS

114.    Pastukhs repeat and reallege every preceding allegation as if fully set forth herein.

115.    Mrs. Pastukh engaged in actions protected by Title VII, 42 U.S.C. § 2000e et seq., to receive accommodations from Defendants for her religious beliefs, including, but not limited to, making numerous oral and written requests for accommodation.

116.    Because of Mrs. Pastukh's protected actions, Defendants retaliated against her and her husband by, among other things, creating a hostile work environment for Mrs. Pastukh, reprimanding Mrs. Pastukh for her religious beliefs, and terminating her husband, Mr. Pastukh and constructively discharging Mrs. Pastukh.

117.    The conduct of the Defendants in retaliating against Pastukhs because of Mrs. Pastukh's protected actions was intentional. Defendants engaged in a discriminatory practice or practices with malice or with reckless indifference to the federally protected rights of the Mrs. Pastukh.

## FIFTH CAUSE OF ACTION
### FAILURE TO ACCOMMODATE IN VIOLATION OF THE FCRA
### ON BEHALF OF MRS. PASTUKH

118.    Pastukhs repeat and reallege every preceding allegation as if fully set forth herein.

119.    By virtue of Defendants' actions and inactions as set forth above, Defendants have violated the FCRA with regard to Mrs. Pastukh by failing to accommodate her sincerely-held religious beliefs.

120.    Mrs. Pastukh's sincerely-held religious belief was a motivating factor in refusing to accommodate her.

## SIXTH CAUSE OF ACTION
### VIOLATION OF THE FCRA – RELIGIOUS DISCRIMINATION AND
### HARASSMENT ON BEHALF OF PASTUKHS

121.    Pastukhs repeat and reallege every preceding allegation as if fully set forth herein.

122.    At all times material hereto, Defendants failed to comply with the FCRA, which states, in part, that it is an unlawful employment practice for an employer "[t]o discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status."

123.    Pastukhs are members of protected class of citizens who are Russian Orthodox Christians.

124.    Russian Orthodox Christianity/Christianity is a recognized religious belief and the Defendants were aware of Pastukhs' religious beliefs.

125.    At all times necessary, Pastukhs were qualified to perform their duties.

126.    Defendants' discrimination and harassing conduct towards Pastukhs was based on their religious beliefs.

127.    Defendants' conduct was pervasive and regular and detrimentally affected Pastukhs.

128.    Similarly situated employees who are not Russian Orthodox Christian were not subjected to the conduct described and referred to in preceding paragraphs of this Complaint.

129.    Defendants violated the FCRA by discriminating against Pastukhs because of their religion. Alternatively, Pastukhs' religion was a motivating factor which prompted the Defendants to harass and fire Pastukhs.

130.    Any alleged nondiscriminatory reason for this treatment of Pastukhs by the Defendants is a mere pretext for the actual reason for discriminating against them based on their religion.

131.    Defendants' actions were malicious and were recklessly indifferent to Pastukhs' rights pursuant to Fla. Stat. §760.10.

132.    The aforementioned actions of the Defendants were done wantonly, willfully, maliciously and with reckless disregard of the consequences of such actions.

<u>SEVENTH CAUSE OF ACTION</u>
VIOLATION OF THE FCRA – RETALIATION ON BEHALF OF PASTUKHS

133.    Pastukhs repeat and reallege every preceding allegation as if fully set forth herein.

134.    Mrs. Pastukh engaged in actions protected by the FCRA to receive accommodations from Defendants for her religious beliefs, including, but not limited to, making numerous oral and written requests for accommodation.

135.    Because of Mrs. Pastukh's protected actions, Defendants retaliated against Pastukhs by, among other things, creating a hostile work environment for Mrs. Pastukh, reprimanding her for her religious beliefs, and terminating her and her husband, Mr. Pastukh.

136.    The conduct of the Defendants in retaliating against Pastukhs because of Mrs. Pastukhs protected actions was intentional. Defendants engaged in a discriminatory practice or practices with malice or with reckless indifference to the federally protected rights of Pastukhs.

<u>EIGHTS CAUSE OF ACTION</u>
RETALIATION UNDER TITLE VII ON BEHALF OF PASTUKHS AND ALL CLASS MEMBERS

137.    Pastukhs repeat and reallege every preceding allegation as if fully set forth herein.

138.    Title VII forbids an employer from retaliating against an employee because of the employee's opposition to "any practice made an unlawful practice" by Title VII. 42 U.S.C. § 200e-3(a).

139.    Pastukh and the Class Members engaged in protected activity, having opposed practices the Title VII forbids, including national origin discrimination;

Defendants were aware of Pastukh's and Class Members' participation in the protected activity; Defendants took adverse action against Pastukhs and Class Members, and a causal connection existed between Pastukhs' and Class Members' protected activity and the adverse action Defendants took.

140.    No legitimate, non-retaliatory reasons exist for the adverse action Defendants took against Pastukhs and the Class Members.

NINTH CAUSE OF ACTION<br/>VIOLATION OF THE FCRA – NATIONAL ORIGIN DISCRIMINATION AND<br/>HARASSMENT ON BEHALF OF PASTUKHS AND ALL CLASS MEMBERS

141.    Pastukhs repeat and reallege every preceding allegation as if fully set forth herein.

142.    At all times material hereto, Defendants failed to comply with the FCRA, which states, in part, that it is an unlawful employment practice for an employer "[t]o discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status."

143.    Pastukhs and Class Members are members of protected class of citizens who are of Russian national origin or are from countries from the former USSR.

144.    Defendants were aware of Pastukhs and Class Members' national origins.

145.    At all times necessary, Pastukhs and Class Members were qualified to perform their duties.

146.     After April 2017, Defendants began to actively harass and discriminate against Pastukhs and Class Members based on their national origin and condoned discriminatory and hostile treatment of them by their management.

147.     Because of Pastukhs and Class Members' national origin, Defendants discriminated against them and created a hostile work environment for them which included, *inter alia*, allowing other employees to mock Pastukhs and the Class Member's accent and national origin, refuse to communicate with them because of this, and reprimand without a legitimate reason and ultimately fire or constrictively discharge the majority of the Staff.

148.     Defendants discrimination and harassing conduct towards Pastukhs and Class Members was based on their national origin.

149.     Defendants' conduct was pervasive and regular and detrimentally affected Pastukhs and Class Members.

150.     Similarly situated employees who are not of Russian national origin or countries from the former USSR were not subjected to the conduct described in this Complaint.

151.     Defendants violated the FCRA by discriminating against Pastukhs and Class Members because of their national origin. Alternatively, Pastukhs' and Class Members' national origin was a motivating factor which prompted the Defendants to harass and fire them.

152.     As a direct and proximate result of the Defendants' conduct, Pastukhs and Class Members have suffered, are now suffering and will continue to suffer emotional distress, humiliation, embarrassment and economic losses.

153.    Any alleged nondiscriminatory reason for this treatment of Pastukhs and Class Members by the Defendants is a mere pretext for the actual reason for discriminating against her based on their national origin.

154.    Defendants' actions were malicious and were recklessly indifferent to Pastukhs' and Class Members' rights under Fla. Stat. §760.10.

155.    These acts of the Defendants were done wantonly, willfully, maliciously and with reckless disregard of the consequences of such actions.

156.    As a direct and proximate result of Defendants' actions, Pastukhs and Class Members have suffered and will continue to suffer lost wages, benefits and entitlements, damage to her career and reputation, personal humiliation, emotional pain, mental anguish, emotional distress, physical pain and suffering, loss of enjoyment of life and embarrassment justifying an award including, but not limited to, back pay, lost benefits, front pay, compensatory damages, and punitive damages according to proof against Defendants.

<u>TENTH CAUSE OF ACTION</u>
VIOLATION OF THE FCRA – RETALIATION ON BEHALF OF PASTUKHS AND ALL CLASS MEMBERS

157.    Pastukhs repeat and reallege every preceding allegation as if fully set forth herein.

158.    Pastukhs and Class Members engaged in actions protected by the FCRA when they requested the Defendants stop discriminating against them based on their national origin, including, but not limited to, by making numerous oral and written requests for accommodation and requesting help against the hostile work environment.

159.    Because of Pastukhs' and Class Members' protected actions, Defendants retaliated against Pastukhs and Class Members by, among other things, creating a hostile work environment for them, reprimanding then for her national origin, and terminating Pastukhs and the Class Members.

160.    The conduct of the Defendants in retaliating against Pastukhs and Class Members because of their protected actions was intentional. Defendants engaged in a discriminatory practice or practices with malice or with reckless indifference to the federally protected rights of the Pastukhs and Class Members.

<u>PRAYER FOR RELIEF ON BEHALF OF PASTUKHS</u>

WHEREFORE, Named Plaintiffs respectfully requests the following relief:

Awards Pastukhs the following damages against Defendants, jointly and severally:

a.    Back pay, front pay, and all benefits along with pre and post judgment interest in the amount of at least $500,000.00;

b.    Damages for pain and suffering, including but not limited to, anxiety, humiliation, loss of enjoyment of life, physical injury and emotional distress, emotional pain and depression, and medical expenses in order to compensate them for the injuries they have suffered and to signal to other employers that discrimination, harassment and retaliation are repulsive to legislative enactments in the amount of at least $500,000.00;

c.    An award of punitive damages under Title VII;

d.    Award any other compensation allowed by law including punitive damages and attorney's fees (Fla. Stat. §448.104);

   e.  Attorneys' fees, costs and expenses to the fullest extent permitted by law.

   f.  Enjoin the Defendants, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against any of their other employees;

   g.  Grant Pastukhs such other and further relief as this Court deems equitable and just.

PRAYER FOR RELIEF ON BEHALF OF ALL PLAINTIFFS

  WHEREFORE, Pastukhs respectfully request the following relief:

  Awards Pastukhs and the Class Members the following damages as against Defendants, jointly and severally:

   a.  An award of back pay, front pay, liquidated damages, lost benefits, and other damages for lost compensation Pastukhs and the Class Members suffered to be determined at trial;

   b.  An award of punitive damages under Title VII;

   c.  Award any other compensation allowed by law including punitive damages and attorney's fees (Fla. Stat. §448.104);

   d.  An award of prejudgment and post-judgment interest;

   e.  An award of emotional distress-related damages;

   f.  An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

   g.  Such other and further relief as this Court deems just and proper.

DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38(b), Named Plaintiffs demand a trial by jury on all questions of fact the Complaint raises.

Dated:  New York, New York
        January 6, 2020

ADLER WELLIKOFF, PLLC

By:   s/ Scott M. Wellikoff
      Scott M. Wellikoff
      Aaron S. Adler
1300 N. Federal Highway, Suite 107
Boca Raton, FL 33432
Phone: 561.923.8600
swellikoff@adwellgroup.com
aadler@adwellgroup.com

LIPSKY LOWE LLP

By:  /s/ Douglas B. Lipsky (Pro Hac Vice Pending)
     Douglas B. Lipsky
     Milana Dostanitch
420 Lexington Avenue, Suite 1830
New York, New York 10170-1830
Phone:  212.392.4772
Fax:  212.444.1030
doug@lipsklylowe.com
milana@lipskylowe.com

*Attorneys for Named Plaintiffs*